## William E. Kimball v. Nathan S. Myers.

*Parol evidence affecting written instruments.* It is competent to show, by parol, that a mortgage given to secure the payment of a specified sum of money, was in fact given to protect the mortgagee as a surety for the mortgagor, upon a promissory note for the same sum, and made at the same time the mortgage was given. The effect of such proof is not to contradict or vary the mortgage, but to identify the demand to which it refers.

*Evidence: Conflict: Credibility.* In cases of conflict in oral testimony, that will be entitled to a preponderance, which is most reasonable in view of all the surrounding circumstances, and is most consistent with conceded facts.

*Heard July 7. Decided October 4.*

Appeal in Chancery from Lenawee Circuit.

William E. Kimball filed his bill in the Circuit Court for the County of Lenawee in Chancery, to compel Nathan S. Myers to deliver up to be canceled a certain mortgage, executed by one George Morton and wife upon premises,

the title to which the complainant claims under Morton; the complainant alleging, as the ground of the relief sought, that the indebtedness which the mortgage was given to secure had been discharged. Answer and replication were filed and testimony taken. The cause was heard upon pleadings and proofs by the Court below, and the bill dismissed; from which the complainant appeals to this Court.

*Eldredge & Walker,* for complainant.

Payment may be proved by parol.—*2 Wash. Real Prop., p. 122.* Payment upon the mortgage of any specific item secured by the mortgage is a discharge thereof to that extent. If the sum paid as a performance of the conditions of the mortgage is of an amount equal to the sum thereby secured, the mortgage is extinguished at once.— *Caruthers v. Humphrey, 12 Mich., 278 ; Spencer v. Perry, 18 Mich., 398; 2 Wash. Real Prop., p. 122, 123, 152, 162 ; Moynahan v. Moore, 9 Mich., 9 ; Van Husan v. Kanouse, 13 Mich., 306; Marvin v. Vedder, 3 Cow., 671.*

A mortgage for future advances is valid.—*Mich. Ins. Co. v. Brown, 11 Mich., 270.* But if the amount limited in terms by the mortgage has been advanced, it is incompetent as against a junior incumbrancer or a purchaser to show that it was intended to cover a larger amount.— *Bank v. Finch, 3 Barb. Ch., 294; Stoddard v. Hart, 23 N. Y., 556 ; Ladue v. D. & M. R., 13 Mich., 380.* Such mortgage will, as to the subsequent purchaser or incumbrance, be postponed to their rights.—*Craig v. Tappin, 2 Sandf. Ch., 78; Ladue v. Detroit & Milwaukee R., 13 Mich., 380.*

So far as Myers is concerned, it is not competent for him to prove, even as between himself and Morton; and still more incompetent for him to show as to third parties without notice, that his mortgage was to secure more than

one sum of $800.—*Adair v. Adair*, 5 *Mich.*, 210; *Savercool v. Farwell*, 17 *Mich.*, 319. By the terms of the mortgage, the sum of $800 was due upon it "on or before one year" from April 16th, 1866. The payment then to Myers, or for his use, of $800 after that day, discharged the mortgage.—*Caruthers v. Humphrey*, 12 *Mich.*, 278.

But it may be claimed that if it is not competent for Myers to show that the mortgage was given for something beside the payment of $800, in cash, that it is equally incompetent for the complainant to do the same, and that —as a result of this reasoning—unless the complainant can prove the payment of $800, in cash, to Myers after the date of the mortgage, as payment thereon, the words of the instrument will be conclusive, and *it must* be held as a mortgage for $800, and for nothing else.

We think that while it is forbidden to the parties to enlarge the terms or the scope of an instrument, that the rule has no application to third parties, who are allowed to show the whole agreement, untrammeled by the writing in any way.—*1 Green. Ev., Sec. 279; 2 Phil. Ev., Cow. & H., & Ed. Notes, p. 650, note.*

If it be urged that upon the whole agreement, as shown by the evidence, it appears that while the mortgage was primarily given as security to Myers for signing the note, yet it was also as security for such sums as Morton then was, or thereafter might be, owing to Morton, we reply: *First*, That this is not established by the evidence; and, *Second*, That it is unquestioned that the mortgage was given primarily to secure Myers for signing a note for $800; the exact sum secured by the mortgage and on the same day. And, as we claim, this legal liability of Myers—notwithstanding it was Morton's debt—was *the* $800 secured by this mortgage, and that payment thereof by any one was as against third parties, an extinguishment of the lien of

the mortgage upon the property. That if Kimball had inquired and learned that the mortgage was given to secure the payment of the joint note, and that the note had been so paid as to extinguish Myers' liability without cost to him, he would have taken the place discharged of the mortgage, even though Myers had told him the whole agreement as he now claims it.

At all events the only amount that can be recovered by Myers is such as was due before June 12th, 1866, the date of the deed from Morton to the complainant, and under which he at once took possession,—*Ladue v. D. & M. R. Co., 13 Mich., 380.*

*A. L. Millard,* for defendant.

The mortgage in this case contains an express acknowledgment of an existing indebtedness of $800, and a covenant to pay the same to the defendant in one year from date, with interest. There is no ambiguity in the terms, and no charge is made either of fraud or mistake. *It is just what the parties intended to have it.* There is no claim that the mortgage has been paid according to its terms. The bill alleges that instead of being intended for what it is on its face, it was for a totally different purpose; that the real contract between the parties was one of indemnity against the Waldby note, *and nothing more;* and that the note having been paid, the mortgage was satisfied.

Is it competent to change the contract, by parol, from that stated in the writing, to one entirely different? We think it clear that it is not.—*1 Greenl. Ev.,* §§ *275, 281, 282; 2 Story's Eq., Juris.,* §§ *1531, 767; Stevens v. Cooper, 1 J. C. R., 425; Barber v. Buel, 5 Cushing, 519, 31 Ill., 538; Columbia v. Amos, 5 Ind., 184, 30 Maine, 94; Jackson v. Cleveland, 15 Mich., 94; Adair v. Adair, 5 Id., 210.* In

this last case the question was the precise one made here, and, as we submit, settles it for this state, whatever conflict of authority there may be elsewhere. And by consequence, the allegations of the bill, having nothing but parol proof to sustain them, must fall to the ground.

But if resort be had to the parol proof, the result must be the same. The answer denies that the sole purpose and agreement of the parties was to indemnify the defendant against the Waldby note, and alleges that Morton was indebted to defendant aside from that, and that the mortgage should be taken and held as security for any indebtedness then existing, or thereafter to be contracted. The burthen of proof is, of course, on the complainant. He offers no testimony but that of Morton to sustain his allegation as to the agreement. The preponderance of proof is largely on the other side.

This is not a bill to redeem. The complainant does not ask to have the amount due on the mortgage ascertained, and offer to pay it. The only case made by the bill is that the mortgage was given *solely* for indemnity against the Waldby note, and that that has been paid by Morton. The complainant must sustain this therefore by the proofs, or his case fails. The proof does not make this out, as we have shown. On the contrary, it is shown that the mortgage was intended as security for any indebtedness that he then owed or thereafter might owe to Myers.

There is no charge in the bill that *this* indebtedness, if there was one, has been paid, and we are not called on, therefore, to make any proof on that subject. But there is not only no such charge in the bill, but the *proofs* do not show that it has been paid. Even if this issue had been made by the pleadings, the least that could be required of the complainant would be that he should show *clearly and unequivocally* that it was paid. The burthen would be

upon him if he had asked to have the mortgage discharged on that ground.

One other position of complainant's counsel remains to be noticed. It was claimed on the argument in the Court below, that even if the mortgage was given to secure *any* indebtedness of Morton to Myers, proof of the payment of the amount thereof on any such indebtedness at any time since the mortgage was given would discharge the mortgage, notwithstanding he might still remain indebted to Myers. This we think cannot be sustained. The mortgage was given to secure any indebtedness he might owe from *time to time*—any *balance* that might be due to Myers. It was a *continuing* security. The case of the *Bank of Utica v. Finch, 3 Barb. Ch. R., 293,* cited by complainant for another purpose in the Court below, is an authority against this position of his counsel. And on *this* point it is not in conflict with any decision of this Court.

There is, however, no proof of any payment of eight hundred dollars by Morton to Myers, since the making of the mortgage.

COOLEY, J.

The bill in this case sets forth that complainant, on the twelfth day of June, 1866, purchased of one George Morton a certain lot in the city of Adrian for the sum of one thousand dollars, and received a deed of conveyance thereof which contained full covenants of title and against encumbrances; that complainant immediately took possession of the premises, and has been in the sole and exclusive possession thereof ever since; that at the time of purchase Morton assured complainant there was no incumbrance upon the premises except a mortgage of eight hundred dollars to one Wisner, and produced a certificate from the

Register of Deeds to that effect; that complainant afterwards learned that on or about the sixteenth day of April, 1866, said Morton with his wife had given a mortgage on said premises to the defendant, Myers, conditioned for the payment by Morton to defendant of eight hundred dollars and interest within one year; that the mortgage was recorded April 17, 1866; that the sole consideration therefor was the signature or endorsement of a note made by Morton to W. H. Waldby & Co., April 16, 1866, by said Myers, as surety, guarantor or otherwise, which note was for eight hundred dollars and payable twenty days from date; that the mortgage was given for the sole purpose of indemnifying said Myers against any liability, cost, charge, loss or damage he might sustain by reason of having signed said note with said Morton, and for no other consideration or purpose; that said note was paid when it matured by said Morton, and that said mortgage was then and thereby fully paid and satisfied, and the said premises released from the lien thereof; that said Morton at the request of complainant afterwards, on the twenty-fifth day of March, 1867, presented to defendant a discharge of said mortgage, and requested him to execute the same, offering to pay all costs, etc., but that defendant refused and ever since has refused to execute the same; that the mortgage constitutes a cloud upon complainant's title and prevents his selling the premises as he desires to do; that Morton is irresponsible and resides out of the state, and that defendant claims the whole sum of eight hundred dollars and interest as still owing on his mortgage, and insists on being paid the same. And the bill prays that said mortgage to defendant may be decreed to be satisfied and discharged, and be delivered up to be canceled.

The answer of the defendant denies that the sole consideration for his mortgage was the signing by him of the

Waldby note as security, endorser, guarantor or otherwise, and denies that any such note was ever signed or endorsed, or otherwise secured by him; but the defendant says he did, at about the time stated in the bill, at the request of Morton, give his own promissory note to said W. H. Waldby & Co., for the sum of eight hundred dollars and interest, payable, according to his recollection and belief, in fifteen days from date; that previous to that time he had been accustomed to have dealings with Morton, and to loan him money and the use of his name, and advance money for his use; that when said mortgage was given, it was expressly agreed between said Morton and himself that it should be security for whatever amount was then or should thereafter be due or owing from time to time from said Morton to defendant; that at that time Morton was actually indebted to him in about the sum of three hundred dollars, independent of the Waldby note; that thereafter and before he had any notice or knowledge of the sale of the premises by Morton, he had advanced money to him, relying upon the mortgage as far as it went; that the first intimation he had of the sale was seeing the premises advertised for sale by complainant; that at that time, although Morton had taken up the Waldby note, he was indebted to defendant in the amount of near two thousand dollars, no part of which has since been paid; and he therefore denies that the mortgage is satisfied, and insists on retaining the same as a valid lien.

The answer having been put in issue by replication, the parties took evidence to prove their respective allegations. Both Morton and the defendant were examined at length, and in many particulars their evidence was directly in conflict. Defendant, however, admits in his testimony that the Waldby note was not given by himself alone, as stated in his answer, and was not payable in fifteen days, but was

given by him with Morton, and payable in twenty days. The principal dispute between them was whether it was agreed the mortgage should cover other indebtedness than the eight hundred dollar Waldby note. Morton expressly denies that there was any such understanding, and defendant with equal positiveness affirms it.

Before determining the question of fact, however, it may be important to consider a question of law which is made on behalf of defendant, and which may dispose of the whole case if decided in his favor. The mortgage from Morton to defendant being given for the sum of eight hundred dollars, payable in one year, it is insisted that it is not competent to prove by parol that it was given to indemnify defendant for becoming security for Morton on the note to Waldby, as this would show that instead of being given for what appears on its face, it was for a totally different purpose; and thus the contract would be changed by parol from that stated in the writing to one entirely different. Several cases are cited in support of this position. *Stevens v. Cooper, 1 Johns. Ch., 425,* was a case in which it was attempted to attach to a mortgage of several lots a parol contemporaneous agreement, that in case the mortgagor sold either of the lots, the mortgagee would release it from the mortgage on being paid a certain proportionate sum of the amount secured. This was so plainly incompetent that no question would now be made regarding the correctness of the ruling which excluded the evidence of such an agreement. *Barker v. Buel, 5 Cush., 519,* was where it was sought to show that a mortgage given to secure a surety against the whole amount of a debt was designed to secure him against one-third only. The same may be said of this case as of the last, and with equal reason. *Foy v. Blackstone, 31 Ill., 538,* holds that it is not competent for the maker of an

absolute note to show, as against the payee or an endorsee, that by an oral contemporaneous agreement, it was only to be payable on a contingency. *Columbia v. Amos, 5 Ind.*, *184*, was in legal effect precisely like the case in Illinois. Cases of similar purport might be cited in great number, but it cannot be important, as no one at this day would venture to dispute the correctness of the principle declared. *Jackson v. Cleveland, 15 . Mich., 94*, was a case where it was sought to establish a resulting trust in lands by parol. *Adair v. Adair, 5 Mich., 204*, seems to be the case most relied upon by the defense. That was a bill to foreclose a mortgage for a certain 'sum of money, payable in definite installments at fixed periods. The defendant offered to show that when the mortgage was given, nothing was due to the mortgagee, and that the mortgage was made not to secure the payment of any sum of money, but as security for the performance by defendant of a parol contract by which he agreed to pay certain debts of the mortgagee, and to work for and assist him in supporting himself and his wife, they being the defendant's parents. The Court held such evidence incompetent, as it entirely changed the character and legal effect of the instrument.

Now we are unable to see that any of these cases has a bearing upon the case at bar. We do not understand that the case, made by complainant's bill and supported by his proof, imports into the mortgage any parol agreement which alters its terms or legal effect. The mortgage was for eight hundred dollars, payable in one year. The complainant does not dispute that the defendant had a right to enforce the mortgage in exact accordance with its terms, unless it was paid and satisfied. His case is, that the mortgage was satisfied by the payment of the Waldby debt; and the parol evidence he offers is not to contradict or vary the mortgage, but to identify the demand to which

it referred. This we understand to be always competent. We understand, also, that evidence of the satisfaction of a demand actually received, though in a manner varying from that agreed, is always competent, notwithstanding it may have been received in accordance with some contemporaneous agreement.—*Bradley v. Bentley, 8 Vt., 245, per Collamer J.; Hagood v. Swords, 2 Bailey, 305; Crosman v. Fuller, 17 Pick., 174.*

We think, therefore, that complainant had a right to give this evidence, and that if the case made by his bill was established by it, he was entitled to the decree prayed for.

Whether the account given by Morton shall be received in preference to that by defendant, must depend very much on whether it is the more reasonable in view of all the surrounding circumstances. We attach no importance to the effort to impeach Morton, as we think it not satisfactory, and we cannot believe defendant would have dealt so largely and so confidentially with Morton as the record shows he did, had he been a man whom he regarded as unworthy of belief. It must be borne in mind that the important facts asserted by complainant, namely, that the mortgage was designed to cover the liability of defendant on the Waldby note, and that that note was satisfied by Morton, are conceded; and starting with these as unquestionable, we cannot resist the impression that the probabilities are all against the statement made by the defendant. When a party asserts an understanding that a mortgage given to him for a certain definite sum, and confessedly designed to secure him against an obligation for precisely the same amount, incurred on the same day, was in truth given to secure a further indebtedness then existing, as well as other debts to be afterwards created, we think—especially as it is not pretended that the debtor was disin-

clined to make the instrument express the real understanding, and the mortgagee, so far as we have any means of judging, might have made his own terms—that the probabilities which oppose this assertion ought to be overcome by a decided preponderance upon the oral evidence, before we should feel warranted in disregarding them. We do not find in this record any such preponderance of oral evidence as will justify the defendant in retaining the mortgage as an existing security, after an amount secured by it, equal to the sum expressed, has been paid off and satisfied by the mortgagor. We think, therefore, that the complainant was entitled to the decree prayed for.

The other Justices concurred.